UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLARENCE EDWARD CLARK, JR.,<br><br>Defendant. | Criminal No. 24-250 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER AND ADOPTING REPORT AND RECOMMENDATION** |

Michael Patrick McBride and Rachel Lynn Kraker, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Ian S. Birrell, **BIRRELL LAW FIRM, PLLC**, 333 South Seventh Street, Suite 3020, Minneapolis, MN 55402, for Defendant.

Defendant Clarence Edward Clark, Jr., was indicted on three charges for sexual abuse of a minor. Magistrate Judge Leo I. Brisbois denied in part Clark's motion for the disclosure of sensitive minor documents and issued a Report and Recommendation ("R&R") recommending the denial of Clark's motions to suppress statements and certain evidence. Clark now appeals the partial denial of his motion for disclosure and objects to the R&R. Because the Court finds that the Magistrate Judge's partial denial of Clark's motion for disclosure for sensitive minor documents was not clearly erroneous or contrary to law, the Court will affirm the Magistrate Judge's ruling. Because the Court finds that Clark's waiver of his *Miranda* rights was voluntary, knowing, and intelligent and

that the search warrants were based on probable cause, the Court will not suppress Clark's statements or the evidence obtained from the search warrants. Accordingly, the Court will overrule Clark's objections, adopt the R&R, and deny the motions to suppress.

## BACKGROUND

On March 1, 2024, the Red Lake Police Department responded to an emergency call that Clark had sexually assaulted a minor on the Red Lake Indian Reservation around 2:00 a.m. (Gov't Ex. 1 at 4.) At the time of the alleged assault, the minor victim, her sister (the "minor witness"), and their uncle, Clark, were all inside the residence of the minors' grandmother. (*Id.*) The minor witness discovered Clark sexually assaulting the minor victim and immediately notified her grandmother, who contacted the police. (*Id.*)

When the responding officers arrived, the minor victim was crying on the bathroom floor; she was naked from the waist down and unable to speak due to apparent intoxication. (*Id.* at 4–5.) Her underwear and pants were lying in Clark's room. (*Id.* at 4.) The underwear had red stains, and a bloody tissue was in the toilet. (*Id.* at 5.) The minor victim's cell phone was underneath Clark's bed. (*Id.*) Clark was arrested at the scene. (*Id.*)

The grandmother, Clark's mother, was unable to consent to a search of the home because she was intoxicated. (Gov't Ex. 2 § III.) The officers thus obtained a tribal search warrant for the residence. (*Id.* § VII.) The officers also obtained a search warrant from Magistrate Judge Douglas L. Micko to collect DNA and other biological evidence from Clark's person. (Gov't Ex. 1.) At the time the warrants were issued and executed, Clark

had not yet showered, changed clothes, or been permitted to clean himself while in custody. (*Id.* at 5.)

At approximately 6:56 p.m. later that day, Clark was interviewed by an FBI special agent and Red Lake criminal investigator. (Gov't Ex. 4 at 0:00:00–25.) After the special agent introduced himself, he read Clark the *Miranda* rights. (*Id.* at 0:00:30–59.) Clark stated that he understood his rights, including his right to stop answering questions if he desired to do so. (*Id.* at 0:00:59–0:01:07.) Clark was then asked to read aloud and sign a form acknowledging that he understood his rights, which he did. (*Id.* at 0:01:10–37.) Clark subsequently signed the "Federal Bureau of Investigation Advice of Rights" form, which provided a *Miranda* warning. (*Id.* at 0:01:50–53; *see also* Gov't Ex. 3.) Clark was asked whether he felt clear-headed and was feeling well enough to conduct the interview. (Gov't Ex. 4 at 0:02:35–48.) Clark said yes. (*Id.*) The interview lasted approximately 45 minutes. (*See generally id.*)

Clark was later indicted on three charges for sexual abuse of a minor. (Indictment, Sept. 12, 2024, Docket No. 1.) He is currently detained awaiting trial. (Order of Detention, Oct. 15, 2024, Docket No. 24.)

Clark filed various pretrial motions. As relevant here, he filed (1) a motion for the disclosure of sensitive minor documents, (2) a motion to suppress any and all statements he made to law enforcement in connection with this case, and (3) a motion to suppress evidence obtained from search warrants. (Sealed Mot., Nov. 11, 2024, Docket No. 28;

Mot. Suppress Statements, Nov. 11, 2024, Docket No. 26; Mot. Suppress Evidence, Nov. 11, 2024, Docket No. 27.)

The Magistrate Judge granted in part and denied in part the motion for the disclosure of sensitive minor documents and recommended the denial of the motions to suppress. (Order & R.&R., Jan. 14, 2025, Docket No. 36.) Clark now appeals the partial denial of his motion for disclosure and objects to the R&R. (Def.'s Appeal/Obj., Jan. 27, 2025, Docket No. 39.)

## DISCUSSION

### I. MOTION FOR DISCLOSURE

#### A. Standard of Review

The Court may designate a magistrate judge to handle certain pretrial matters, including a pretrial order concerning a motion to disclose sensitive documents. *See* 28 U.S.C. § 636(b)(1) (listing exceptions to the general rule). The standard of review applicable to an appeal of a magistrate judge's order on non-dispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). The Court will reverse the denial of a motion to disclose sensitive documents only if it is clearly erroneous or contrary to law. *See* D. Minn. LR 72.2(a)(3); Fed. R. Crim. P. 59(a).

#### B. Analysis

The issue is whether the partial denial of Clark's motion for disclosure of sensitive minor documents is clearly erroneous or contrary to law. The Court finds it is not.

At this point, Clark has received all the information the United States possesses, including the forensic examinations of the minors. (Tr. at 5:20–23, 6:2–3, Feb. 12, 2025, Docket No. 41.) But Clark requested the disclosure of, or alternatively in camera review of, additional records held by third parties, including education records, healthcare records, and statements he speculates the minors may have given to treatment staff when they were placed on 72-hour holds at different locations after the alleged sexual assault. (*Id.* at 5:23–6:1.)

The Magistrate Judge evaluated Clark's motion as a request to seek subpoenas pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. To procure a subpoena from the district court under Rule 17(c), a movant must show (1) that the records sought are evidentiary and relevant, (2) that the records are required for proper preparation for trial, and (3) that the motion was made in good faith and "not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). Notably, as mentioned in the R&R, the Supreme Court held long ago that Rule 17(c) "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

The Magistrate Judge concluded that Clark's request failed to meet all three requirements because the records were neither relevant nor necessary for Clark to properly prepare for trial, especially because Clark already had in his possession the forensic interviews of the two minors. However, the Magistrate Judge granted Clark's

-5-

request to the extent that the United States must comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) to disclose exculpatory evidence that could be used to impeach government witnesses that is "within the government's possession, custody, or control."  Fed. R. Crim. P. 16(a)(1)(E).

Clark argues that the Magistrate Judge erred in partially denying his motion, but that denial was not clearly erroneous or contrary to law.  Clark seeks the requested records because "[d]iscovery indicates both [minors] had chemical, behavioral, medical, and/or therapeutic issues," including previous sexual assaults, hospitalization for alcohol poisoning, and dropping out of school, which Clark contends "need to be explored in the case." (Sealed Mot. at 2.)  Specifically, he argues these records would be critical to the examination of the minors' motivation to testify, abilities to recall events, and propensity for truthfulness—in other words, for impeachment purposes.  But the Magistrate Judge reasonably concluded that, notwithstanding any exculpatory and impeachment evidence and Rule 26.2 materials that the United States is obligated to provide under *Brady* and *Giglio*, any further evidence held by third parties would not be relevant or necessary for Clark to properly prepare for trial.  Though Clark has articulated a basis that may establish the materiality of the requested records, e.g., for impeachment purposes, the need for impeachment evidence is insufficient to require its pretrial production pursuant to Rule 17(c).  *Nixon*, 418 U.S. at 701; *see also United States v. Jourdain*, No. 05-439, 2006 WL 737087, at *3 (D. Minn. Mar. 20, 2006) (concluding defendant failed to provide specific

basis for the production of medical and school records for in camera review). Accordingly, the Court will affirm the Magistrate Judge's ruling.

## II.  MOTIONS TO SUPPRESS

### A.  Standard of Review

After an R&R is filed by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). For a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(1), (3); *see also* 28 U.S.C. § 636(b)(1). "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

### B.  Motion to Suppress Statements

Clark objects to the R&R's recommendation to deny his motion to suppress any and all statements he made to law enforcement in connection with this case. Conceding he was subject to custodial interrogation on March 1, 2024, Clark asserts that the United States failed to meet its burden of demonstrating that he knowingly and intelligently waived the privilege against self-incrimination and the right to retain appointed counsel.

It is well established that incriminating statements may be excluded under the Fifth Amendment if they are the result of custodial interrogation without the proper *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). However, *Miranda* rights are

lawfully waived if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension. *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). The United States has the burden to establish, by a preponderance of the evidence, that a *Miranda* waiver was valid. *United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011).

There are two distinct aspects of determining whether a *Miranda* waiver is voluntary, knowing, and intelligent. First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran*, 475 U.S. at 421 (1986)). The United States Supreme Court has explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *see also United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002). The Eighth Circuit instructs courts to consider "whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010) (quotation omitted). Specifically, courts should consider "among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Id.* (quotation omitted).

The evidence provided by the United States to the Court does not indicate any intimidation, coercion, or deception by the interrogating officers. Before the interview began, Clark was read his *Miranda* rights and asked whether he understood his rights, including the freedom to stop answering questions if he desired to do so. Clark verbally indicated that he understood his rights. He was also asked to read aloud and sign the Advice of Rights form acknowledging that he understood his rights. The entirety of the interview was conducted in a conversational tone, and the officers made no promises or threats to Clark. Considering the totality of the circumstances, including Clark's explicit waiver of rights, the relatively short length of the interview, and the absence of any allegation of coercive action, the Court finds that Clark's waiver was voluntary. *See Vinton*, 631 F.3d at 483 ("Even if a suspect has a somewhat diminished capacity to resist coercion due to a mental defect . . . a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion.").

The second aspect in determining whether a *Miranda* waiver passes constitutional muster requires that the waiver must have been knowing and intelligent. *See id.* at 483. For this prong, courts consider whether the defendant had "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998) (quotation omitted).

Based on a review of the recorded interview of Clark that occurred on March 1, 2024, the evidence indicates that Clark was aware of the waiver of his rights and the

consequences of that decision. He verbally assented that he understood his waiver of rights and his ability to stop answering questions if he so desired. He also responded appropriately to the questions and demonstrated mental competence throughout the interview. The Court thus finds that Clark's waiver was knowing and intelligent.

Considering the totality of the circumstances, the Court will not suppress Clark's statements in connection with this case.

### C. Motion to Suppress Evidence

Clark objects to the R&R's recommendation that his motion to suppress evidence be denied. He relies on previous arguments outlined in the briefing for his motion, primarily arguing that the search warrants lacked probable cause.

Clark moved to suppress (1) evidence from the home in which he was residing obtained from the tribal search warrant and (2) DNA evidence and other biological evidence from his person obtained from the other search warrant.

The Fourth Amendment protects against unreasonable searches and seizures and dictates that a search warrant may only be issued if it is supported by probable cause. U.S. Const. amend. IV. In determining whether probable cause exists, the search warrant must demonstrate that, given all the circumstances set forth in the affidavit, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This requires the issuing judge to look at the totality of the circumstances. *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998). When a search warrant is based solely on an affidavit, courts may only consider "that

information which is found within the four corners of the affidavit" to determine the existence of probable cause. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citation omitted). An issuing judge's determination that probable cause has been established "should be paid great deference by reviewing courts." *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *Gates*, 462 U.S. at 236).

### 1. Evidence from the Residence

Law enforcement searched and seized evidence from the home where Clark was residing pursuant to a tribal search warrant obtained on March 1, 2024. Clark argues that the search warrant lacked probable cause, particularly because the probable cause statement included secondhand reports from witnesses, stated that the grandmother could not consent to a search given her intoxication, and was based on information that itself was the product of a warrantless search. Specifically, Clark takes issue with the fact that the probable cause statement included an officer's observation that the minor victim's pants were in Clark's room and had a small bloodstain on them.

The search warrant application established probable cause that evidence of the alleged sexual assault of the minor victim would be found in the residence where the assault was reported to have occurred. The probable cause statement explains that the grandmother had called the police to report that a potential sex offense had occurred at her residence by Clark. When the first responders arrived at the scene, they could enter the home without a warrant because they had an "objectively reasonable basis to believe that entry is necessary 'to render emergency assistance to an injured occupant or to

protect an occupant from imminent injury.'" *United States v. Sanders*, 4 F.4th 672, 677 (8th Cir. 2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  The minor witness told first responders that she had discovered her uncle, Clark, lying on top of the minor witness, who was half-naked and "blacked out" from apparent intoxication, in Clark's bedroom.  When officers entered the home, one of them observed the minor victim's pants lying in Clark's bedroom, and that the pants had a small bloodstain on them.  The Court finds that the information that the officers received and observed at the scene was sufficient to establish probable cause that evidence of a sexual assault would be found in the grandmother's residence.

Considering the totality of the circumstances, the Court will not suppress evidence obtained from the search of the grandmother's residence.

### 2.     DNA and Other Biological Evidence

On March 1, 2024, law enforcement collected DNA and other biological evidence from Clark's person through oral swabs, genital swabs, pubic hairs, articles of clothing, and photographs of Clark.  Clark argues that the search warrant granting the officers permission to obtain such evidence lacked probable cause to support the search and was derivative of an earlier unlawful search.  Clark primarily argues that the search was unreasonable and overbroad.

The United States Supreme Court has recognized that collections of "biological samples" from an individual's person is a search within the meaning of the Fourth Amendment.  *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 618 (1989).  While the Court

recognizes the intrusiveness of the search at issue upon Clark's expectation of privacy in his person, the Court concludes that the search warrant for the DNA and other biological evidence was based on probable cause. The search was not unreasonable or overbroad, as the affidavit submitted in support of the search warrant application explained within its four corners what particular evidence was to be seized and why. *United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002) ("The Fourth Amendment provides that warrants must 'particularly describ[e] the place to be searched, and the persons or things to be seized.'" (quoting U.S. Const. amend. IV)). Specifically, the affidavit indicated that DNA and other biological evidence is excreted during sexual encounters, and that such DNA evidence is subject to destruction if not collected in a timely manner, ideally within 48 hours of the alleged sexual assault. The officers had responded to a call indicating that Clark had committed sexual assault, and at the time the search was conducted Clark had not yet showered, changed clothes, or been permitted to clean himself while in custody, which lends credence to a finding that DNA evidence would be relevant. The affidavit also described the report of the alleged sexual encounter between Clark and the minor victim, including the fact that Clark was discovered sexually assaulting the minor victim in his room, that the minor victim's underwear and pants were found in Clark's room on the floor, and that her cell phone was found under Clark's bed. All of this information was sufficient to demonstrate there was probable cause to believe that the evidence—including DNA swabs, hair samples, clothing articles, and photographs of Clark—would

yield relevant evidence of the alleged sexual assault in this case. Furthermore, because the Court has concluded that the search of the residence was based on probable cause, the search for DNA and other biological evidence was not derivative of an earlier unlawful search.

Considering the totality of the circumstances, the Court will not suppress evidence obtained pursuant to the DNA search warrant.

## CONCLUSION

Because the Magistrate Judge's partial denial of Clark's motion was not clearly erroneous or contrary to law, the Court will affirm the Magistrate Judge's ruling. Because the Court finds that Clark's waiver of his *Miranda* rights was voluntary, knowing, and intelligent, the Court will not suppress Clark's statements in connection with this case. And because the Court finds that the search warrants were based on probable cause, the Court will not suppress evidence from the residence or the DNA and other biological evidence from Clark's person. Accordingly, the Court will overrule Clark's objections and adopt the R&R. Clark's motions to suppress will be denied.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Magistrate Judge's Order granting in part and denying in part Defendant's Motion for Disclosure of Sensitive Minor Documents [Docket No. 35] is **AFFIRMED**;

2. Defendant's Appeal/Objection of the Magistrate Judge Decision [Docket No. 39] is **OVERRULED**;

3. The Report and Recommendation [Docket No. 36] is **ADOPTED**;

4. Defendant's Motion to Suppress Statements [Docket No. 26] is **DENIED**; and

5. Defendant's Motion to Suppress Evidence Obtained by Search and Seizure [Docket No. 27] is **DENIED**.

DATED: March 14, 2025                         _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                   JOHN R. TUNHEIM
                                                            United States District Judge